**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Elizabeth Achtschin, | No. CV-15-08257-PCT-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Carolyn W. Colvin, | |
| Defendant. | |

Plaintiff Elizabeth Achtschin seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security which denied her disability insurance benefits and supplemental security income under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. Because Achtschin has not identified any reversible error, the Court will affirm.

**I.    Background.**

Achtschin is a 61-year-old female who previously worked as a cashier, caregiver, and small business owner. A.R. 22. On January 28, 2014, Achtschin filed an application for disability insurance benefits and supplemental security income, alleging disability beginning October 31, 2013. A.R. 12. On April 7, 2015, an ALJ held a hearing on the application. A.R. 30-61. Achtschin appeared with her attorney and testified. A vocational expert also testified. *Id.*

On August 3, 2015, the ALJ issued a decision that Achtschin was not disabled within the meaning of the Social Security Act. A.R. 12-24. The decision proceeded

according to the five-step evaluation process set forth at 20 C.F.R. § 404.1520(a)(4). At step one, the ALJ found that Achtschin met the insured status requirements of the Social Security Act through September 30, 2017, and that she had not engaged in substantial gainful activity at any time between the alleged onset date and the date of decision. A.R. 13.  At step two, the ALJ found that Achtschin had the following severe impairments: bipolar disorder and polysubstance abuse disorder, in reported remission. A.R. 14.  At step three, the ALJ determined that Achtschin did not have an impairment or combination of impairments that met or medically equaled an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404.  A.R. 14.  At step four, the ALJ found that Achtschin had the residual functional capacity ("RFC") to perform:

> a full range of work at all exertional levels but with the following nonexertional limitations: she can understand, remember and carry out simple and repetitive tasks, make simple work-related decisions, occasionally interact with coworkers, supervisors and the public, within a routine work environment with few, if any, changes.

A.R. 16.  The ALJ found Achtschin unable to perform any of her past relevant work. A.R. 22.  At step five, the ALJ conclude that, considering Achtschin's age, education, work experience, and RFC, there were jobs existing in significant numbers in the national economy that Achtschin could perform, including hand packager, salvage laborer, and kitchen helper.  A.R. 23.  The Appeals Council denied Achtschin's request for review, making the ALJ's decision the Commissioner's final decision.  A.R. 3.

**II.   Legal Standard.**

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).  The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).  Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.*  In determining whether substantial evidence supports a decision, the court must consider the record as a whole

and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

**III.   Analysis.**

Achtschin argues that the ALJ (1) improperly discounted her credibility; (2) improperly discounted the opinion of treating psychiatrist Dr. Lisa Parsons; and (3) improperly adopted an RFC not presented to the vocational expert.  Doc. 14 at 3.

**A.   Symptom Testimony.**

In evaluating the credibility of a claimant's testimony regarding her symptoms, the ALJ is required to engage in a two-step analysis.  First, the ALJ must determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce the symptoms alleged.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  Second, if there is no evidence of malingering, the ALJ may reject the claimant's testimony only by giving specific, clear, and convincing reasons.  *Id.*

Achtschin reported that her mental impairments, including bipolar disorder, post-traumatic stress disorder, insomnia, and anxiety, caused marked limitations that would render her unable to perform even sedentary work on a regular and continuing basis.  A.R. 17.  The ALJ determined that Achtschin's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely credible.  A.R. 17-18.  The ALJ gave the following explanation for her credibility determination:

> The record shows the claimant has a history of work cessation for nonmedical reasons, including theft and walking off the job.  She also reported intending on re-enrolling in medical billing classes when she got a new job.  She reported engaging with friends and family.  These factors demonstrate the claimant's mental and physical impairments are not as severe as alleged.
>
> The record shows the claimant's mental symptoms are manageable when she takes her medications and complies with treatment.  Progress records from May 31, 2011 indicate the claimant's medications were working well.

> . . .
>
> Mental health progress notes from March 21, 2013 show the claimant reported her medications had been targeting her symptoms and moods well. . . . She reported quitting her job at Wal-Mart because she did not 'feel supported there.' The claimant was seeking other work, with an upcoming interview with Merry Maids housekeeping service. She also reported that her mental health symptoms had remained stable, with no hospitalizations or incarcerations.
>
> As of September 2013, the claimant had a GAF of 60, consistent with high-end moderate symptoms and limitations in social and occupational functioning. . . . Review of her records show that she consistently refills Ambien about 5 days early and that she also[ ]obtained Ambien from another provider []at the same time. This suggests the claimant may abuse her sleep medication, which undermines her credibility.
>
> On September 12, 2013, the claimant said she had been arrested the previous night for assaulting her daughter. This activity does not bolster the claimant's credibility in any way. She also reported losing her job for stealing from her employer. . . .
>
> The claimant's symptoms appear to be better controlled than she alleges.

A.R. 18-19.

The Commissioner declines to defend some of the reasons provided by the ALJ for discounting Achtschin's credibility. For example, the Commissioner declines to defend the ALJ's clearly erroneous finding that Achtschin assaulted her daughter (in fact, Achtschin was assaulted *by* her daughter (A.R. 384)). But the Commissioner argues that the ALJ was justified in discounting Achtschin's credibility based on: (1) her history of work cessation for nonmedical reasons; (2) her history of abusing Ambien; (3) her work as a housekeeper; and (4) evidence that her symptoms were manageable with medication. Doc. 16 at 4-9. Because the Court concludes that the first two reasons are specific, clear, and convincing reasons for discounting Achtschin's credibility, it need not consider the Commissioner's other reasons.

A claimant's history of work cessation for nonmedical reasons is a clear and convincing reason for discounting her testimony. *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001). Achtschin does not dispute this, but argues that she stopped working due to her bipolar disorder. Doc. 14 at 13. There is evidence in the record, however, that she quit her job at Wal-Mart because "she did not feel supported there,"

- 4 -

and began to look for new work immediately afterwards. A.R. 434. Although it is certainly plausible that Achtschin's bipolar disorder contributed to her decision to quit, it was not unreasonable for the ALJ to conclude that the decision was made for nonmedical reasons. Substantial evidence supports the ALJ's finding that Achtschin had a history of work cessation for nonmedical reasons, and this finding provides a clear and convincing reason for discounting Achtschin's credibility.

A claimant's history of abusing prescription medications is a clear and convincing reason for discounting her testimony, insofar as it suggests a motive for exaggerating symptoms. *See Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001). The ALJ found Achtschin not entirely credible based, in part, on evidence in the record that she consistently refilled her Ambien prescription five days early, that she once obtained Ambien from multiple providers at the same time, and that, on at least one occasion, she reported taking two extra pills. A.R. 18 (citing A.R. 366, 384). Achtschin notes that her doctor did not diagnose this behavior as substance abuse and continued to prescribe Ambien after noticing it. Doc. 17 at 3-4. But the doctor's failure to describe this behavior as substance abuse did not prevent the ALJ from drawing her own common-sense conclusions from the evidence. *See Morgan v. Comm'r*, 169 F.3d 595, 601 (9th Cir. 1999) ("Where medical reports are inconclusive . . . resolution of conflicts in the testimony are functions solely of the [Commissioner].") (citation and internal quotation marks omitted). Substantial evidence supports the ALJ's finding that Achtschin had a history of abusing Ambien, and this finding justified the ALJ's decision to discount Achtschin's credibility.

**B.     Opinion of Dr. Parsons.**

Dr. Lisa Parsons has been Achtschin's treating psychiatrist since at least May 2012. A.R. 515. On August 6, 2014, Dr. Parsons completed a mental ability questionnaire at Achtschin's request. In this questionnaire, Dr. Parsons opined that Achtschin had no useful ability: (1) to relate to co-workers or supervisors; (2) to deal with the public; (3) to use judgment; (4) to deal with work stresses; (5) to function

1  independently; (6) to maintain attention and concentration; (7) to understand, remember, and carry out simple job instructions; (8) to behave in an emotionally stable manner; (9) to relate predictably in social situations; or (10) to demonstrate reliability. A.R. 588-89. Dr. Parsons attributed these limitations to Achtschin's "[s]evere anxiety, mood instability, and memory impairment." *Id.*

On January 23, 2015, Dr. Parsons completed a second questionnaire. Dr. Parsons opined that Achtschin suffered from marked impairment in her ability: (1) to work with or in proximity to others without distracting them or exhibiting behavioral extremes; (2) to perform and complete work tasks at a consistent pace; (3) to carry through instructions and complete tasks independently; (4) to maintain attention and concentration; (5) to perform at production levels expected by most employers; (6) to respond appropriate to changes; (7) to remember locations, workday procedures, and instructions; (8) to take necessary precautions with respect to normal hazards; and (9) to tolerate customary work pressures. A.R. 590-92. Dr. Parsons further opined that Achtschin suffered from extreme impairments in her ability to work with or in proximity to others without becoming distracted by them, and in her ability to behave predictably, reliably, and in an emotionally stable manner. *Id.* Dr. Parsons attributed these limitations to Achtschin's bipolar disorder, post-traumatic stress disorder, generalized anxiety disorder, and panic disorder. A.R. 592.

Dr. Parsons's opinions are contradicted by other doctors, including the state agency psychological consultants Mary Downs, Ph.D, and Andrianne Gallucci, Psy.D. A.R. 20, 69-75, 101-05. Therefore, the Court must determine whether the ALJ offered specific and legitimate reasons for rejecting Dr. Parsons's opinions – that is, reasons based on "a detailed and thorough summary of the facts and conflicting clinical evidence." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986). The ALJ offered the following explanation for discounting Dr. Parsons's opinions:

> Dr. Parson's [sic] opinion was given less weight because it is inconsistent with the greater objective record, including [the] state agency reviewing physician opinion, and it is inconsistent with the claimant's reported level of functioning, her intermittent work, her preserved relationship with her

employer and benefit from medication. It is also inconsistent with Dr. Parson's [sic] own treatment notes, which support the finding of no more than moderate mental limitations.

A.R. 20. The Court must determine whether any of the following constitutes a specific and legitimate reason for discounting Dr. Parsons's opinions: (1) inconsistency between the opinions and those of the state agency reviewing physician; (2) inconsistency between the opinions and Achtschin's reported activities; (3) Dr. Parsons's failure to consider the efficacy of medication in controlling Achtschin's symptoms; or (4) inconsistency between the opinions and Dr. Parsons's treatment notes. Because the Court concludes that the last reason is a specific and legitimate reason for discounting Dr. Parsons's opinions, it need not consider the ALJ's other reasons.

Inconsistency between a physician's opinion and the underlying treatment notes is a clear and convincing reason for discounting that opinion. *Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003). In *Morgan v. Commissioner*, for example, the Ninth Circuit upheld the ALJ's decision to discount a doctor's opinion because:

> The ALJ listed specific examples of how the level of impairment indicated by [the doctor] was unreasonable given the description of [the claimant's] symptoms in her reports and other evidence in the record. For example, [the doctor], at various times, assessed [the claimant] as engaging and cooperative, with a sense of humor and a good ability to express himself. She indicated that [the claimant] was adequately groomed and punctual for his appointments. The ALJ relied on these specific factors in rejecting [the doctor's] opinion that [the claimant] "lacked an ability to function socially in order to conduct personal business and otherwise carry out daily activities."

169 F.3d at 601.

The ALJ identified specific inconsistencies between Dr. Parsons's opinion and her treatment notes, similar to those identified in *Morgan*. The ALJ explained:

> Although Dr. Parsons assessed serious limitations [in her August 6, 2014 opinion], the claimant's presentation that day on exam was not consistent with such limitations. On this date, Dr. Parsons observed the claimant with a cooperative and engaging attitude, pressured but normal speech, and clear and understandable language, within normal limits. The claimant's affect was appropriate to mood and broad ranged. Her thought processes were goal directed, logical and sequential. She complained of suicidal ideation but denied intent or plan. Judgment and insight were good, self-concept was realistic, and she was fully oriented in all spheres.

A.R. 19. The ALJ reasonably found that these notes were "consistent with no more than moderate limitations in mental functioning." *Id.*

The Commissioner points to additional support for the ALJ's position in the record.[1] As the Commissioner notes, Dr. Parsons's treatment notes between April 2013 and January 2015 consistently report cooperative and engaged attitude, good eye contact, clear and coherent speech, logical and directed thought process, good judgment, and unremarkable cognition. Doc. 16 at 10 (citing A.R. 376, 380, 384, 390, 488, 585-86, 631-23). Dr. Parsons's treatment notes for March 21, 2014 report are particularly hard to square with the opinion she provided in August of that year. These notes indicate that Achtschin reported sleeping well and feeling rested, having no panic attacks, having no feelings of worthlessness or hopelessness, and having a generally "ok" mood. A.R. 380. Given the discrepancy between the dire picture painted by Dr. Parsons's opinions and the more nuanced picture painted by her treatment notes, it was reasonable for the ALJ to assign less weight to the opinions.

### C.  RFC.

Achtschin argues that the ALJ erred by adopting an RFC that differs from the hypothetical posed to the vocational expert. At the hearing, the ALJ asked the vocational expert whether a hypothetical individual of Achtschin's background would be able to perform work existing in significant numbers in the national economy if she was limited to "understand[ing], remember[ing], and carry[ing] out *simple instructions*." A.R. 57 (emphasis added). In her decision, however, the ALJ stated that Achtschin was limited to understand[ing], remember[ing], and carry[ing] out *simple and repetitive tasks*." A.R. 16 (emphasis added). Achtschin argues that the change in wording is material because there is a "difference between the ability follow instruction and the ability to accomplish tasks." Doc. 14 at 11. The Court does not agree. As the Commissioner puts it, "[a]

---

[1] Although the Court may not affirm the ALJ's decision based on grounds not set forth in the ALJ's opinion, the Court can consider evidence not specifically mentioned in the opinion if it was available to the ALJ and supports the ALJ's stated ground for decision. *Warre v. Comm'r*, 439 F.3d 1001, 1005 n.3 (9th Cir. 2006).

common sense reading of the two terms – simple tasks versus simple instructions – reveals that both terms convey the same concept." Doc. 16 at 13. To perform simple tasks, one must understand, remember, and implement simple instructions. Conversely, the ability to understand, remember, and implement simple instructions implies the ability to perform simple tasks. The slight discrepancy between the wording the ALJ used at the hearing and the wording she used in her decision was not harmful error.

In her reply, Achtschin points to an additional discrepancy: the ALJ's hypothetical indicates that Achtschin would "work best" in a routine work environment (A.R. 57-58), while the decision states without qualification that Achtschin is limited to working within such an environment. A.R. 16. Achtschin waived this argument by failing to raise it in her opening brief, thereby depriving the Commissioner of an opportunity to respond. *Alaska Ctr. For Env't v. U.S. Forest Serv.*, 189 F.3d 851, 858 n.4 (9th Cir. 1999) ("Arguments not raised in opening brief are waived."). Even if the issue had been properly presented, however, the Court could not conclude that the ALJ's ultimate finding of non-disability rested on the subtle distinction between Achtschin "working best" in a routine work environment and being limited to work in such an environment.

**IT IS ORDERED** that the final decision of the Commissioner of Social Security is affirmed. The Clerk shall enter judgment accordingly and **terminate** this case.

Dated this 6th day of July, 2016.

_____
David G. Campbell
United States District Judge

- 9 -